
PLAINTIFF'S EXHIBIT 11

## Erik Yoder

**From:** William O'Neil
**Sent:** Tuesday, June 17, 2014 12:00 PM
**To:** Erik Yoder; Terrance Shanahan
**Subject:** RE: 511160770 - TEEL, PAM - 1542 WINDEMERE AVE Baltimore, MD 21218

I think BSI agrees to pay up to 350, and in the past BSI has not tried to collect fees and costs from borrowers at foreclosure sale, but this modification is different since often those costs are being rolled into the loan amount. I agree we need to look at this more closely.

William T. O'Neil
The O'Neil Group LLC
1629 K Street, N.W. Suite 300
Washington, D.C. 20006
woneil@oneilgroupllc.com
202-445-4277

---

**From:** Erik Yoder
**Sent:** Tuesday, June 17, 2014 11:57 AM
**To:** William O'Neil; Terrance Shanahan
**Subject:** RE: 511160770 - TEEL, PAM - 1542 WINDEMERE AVE Baltimore, MD 21218

There are 2 levels to this billing practice: 1) Between MSO and BSI, and 2) what the borrower is charged. The borrower cannot under any circumstances we billed by BSI or MSO for costs which are not **actual**.

If we are invoicing costs which are not actual to BSI they are almost certainly passing them through to the borrower via their accounting entries of total debt. I don't believe we have any control as to what they will do with our invoices regarding these costs in scenarios where they sell the loan to another servicer. I have a hard time believing they would allow their law firms to mark-up costs which they would unwittingly pass on to borrowers in scenarios like this file discussed in the email chain. Pam Teel will have to pay the costs of this title in order to reinstate her loan. This is a prime example of why it would not make any sense for BSI to agree to be billed the maximum rate allowed for every firm in the Country. If that were the case then every firm is coincidentally submitting title invoices in every part of the Country for the same exact price.

From a Maryland rule of ethics standpoint the client is not to be overbilled. Do we have anything in writing expressly permitting us to charge them twice the amount of costs and in the case of updates 11 times the cost? Why would they ever agree to that cost arrangement?

---

**From:** William O'Neil
**Sent:** Tuesday, June 17, 2014 11:45 AM
**To:** Erik Yoder; Terrance Shanahan
**Subject:** RE: 511160770 - TEEL, PAM - 1542 WINDEMERE AVE Baltimore, MD 21218

I think the disconnect comes from BSI's standard fee for title work, which approves a $350 fee. Most of the other firms do the title work in house or with an affiliated company and they charge $350, and BSI pays it. If we need to follow a different practice in MD then we should do so, but standard practice for BSI is not to look behind the law firms charge to determine what they are "paying:" for it. Terry is that right?

William T. O'Neil
The O'Neil Group LLC

1

From: Erik Yoder <EYoder@onellgroupllc.com>
Date: Tue, Jun 17, 2014 at 1:05 PM
Subject: FW: billing discussion
To: "erikyoder1@gmail.com" <erikyoder1@gmail.com>

**From:** Erik Yoder
**Sent:** Tuesday, June 17, 2014 1:06 PM
**To:** William O'Neil; Terrance Shanahan
**Subject:** billing discussion

Bill,

I just wanted to follow-up on our discussion today regarding invoices submitted to BSI that do not reflect the actual costs we paid to All-star title. As we discussed and you agreed, I would like assurances that the following has been completed within the next two weeks:

1) BSI is informed that invoices for Title work were submitted on files that did not reflect the actual costs but instead were the maximum allowable costs pursuant to their nationwide schedule(all of the files received since I started and any others prior to my start date);

2) BSI is offered the return of these funds;

3) BSI agrees to remediate this billing error as it may affect borrowers by correcting or reconciling any and all of the borrower's accounting of debt within their system of maintaining these records so that none of the borrowers are charged costs which were not actual.

Please cc me on any communications with BSI related to this issue. Additionally, if the resolution of this matter is not in writing but via a meeting in person with the client, I need to be present so that I have 100% certainty that my independent bar association ethical obligations have been fulfilled.

Sincerely,

Erik

Erik W. Yoder, Esq.

The O'Neil Group, LLC

7500 Old Georgetown Road

Suite 1375

Bethesda, MD 20814

(202) 684-7140

* Licensed in MD & Washington, D.C.

**This firm is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.**

•CONFIDENTIALITY NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

CONFIDENTIALITY & DISCLOSURE NOTE:
This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system.

Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by us, our subsidiaries or affiliates, as applicable, for any loss or damage arising in any way from its use. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE:
To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending any transaction or matter addressed herein to another party.