PLAINTIFF'S EXHIBIT 13

## Terrance Shanahan

**From:** Erik Yoder
**Sent:** Wednesday, June 18, 2014 12:32 PM
**To:** William O'Neil; Terrance Shanahan
**Subject:** RE: Hurley auctioneers

I explained to you the issues with trying out this new vendor in my previous email.

If we are going to use Hurley Auctions within the rules of ethics then we need full disclosure to the client and their consent. Here are the reasons why:

1) Terry assisted with the drafting of the vendor's agreement. This could be construed as a lawyer/client relationship between Terry and Hurley who also happens to be a personal friend. In this case, the Bar would require full disclosure of the conflict of interest and the written consent of this waiver of a conflict by BSI. It is possible that they would treat this as dual representation between clients that are adverse to each other.

2) On its face the cost of using Hurley auctions is $500 greater than using Harvey West. Additionally, the last draft of the agreement from Hurley included a commission to be paid if the property sold within 60 days of the foreclosure auction. There is absolutely no way this can be agreed to without BSI's express consent.

As such, please secure consent from BSI to the following terms for the Everett sale:

1) At a minimum there will an added cost of $500 to the cost of the sale compared to other sales;
2) Mr. Hurley is a personal acquaintance of Terry's;
3) Terry drafted the vendor agreement for Hurley Auctions that binds BSI to Hurley Auctions and includes the higher initial fee, contractual clauses and liabilities that do not exist between BSI and Harvey West;
4) Hurley Auctions is located in Pennsylvania, not Maryland;
5) Harvey West will still be required for service of OTDs and skip traces because Hurley Auctions does not intend to perform these services (nor has the intent to develop their operation to reach that goal any time in the near future);
6) Hurley Auctions will be performing only part of the service package that Harvey West already provides and therefore we are going from one to two vendors;
7) As far as we know, Mr. Hurley does not have any staff to back him up in case he is running late or going to miss the sale altogether, whereas Harvey West provides an auctioneer and five individuals for back up, with at least three attending the sale; and
8) Hurley Auctions has not been used by other Maryland foreclosure firms for auctions or other purposes.

Guys- this is not an exhaustive list but just the obvious reasons.

Please reconsider and let me know your decision so that I can plan accordingly.

Erik

**From:** William O'Neil
**Sent:** Wednesday, June 18, 2014 11:59 AM
**To:** Erik Yoder
**Cc:** Terrance Shanahan
**Subject:** RE: Hurley auctioneers

694


T Shanahan DEPOSITION EXHIBIT 8 1-19-17

CONFIDENTIAL

TOL008070

Please don't cancel anything yet. I want to see if the overall cost is comparable. I think there is no issue trying a new vendor on a limited basis

William T. O'Neil
The O'Neil Group LLC
1629 K Street, N.W. Suite 300
Washington, D.C. 20006
woneil@oneilgroupllc.com
202-445-4277

**From:** Erik Yoder
**Sent:** Wednesday, June 18, 2014 11:54 AM
**To:** William O'Neil
**Subject:** RE: Hurley auctioneers

Ok, you agree that considering their costs are 3 times more expensive then I should cancel them for this sale with the exception of the publication advertisements which they have already coordinated?

Terry coordinated the terms of the auctioneer agreement himself and asked me to edit it for him. While I completely understand that you may not have assisted with the pricing aspect there can be little doubt that Terry is not considering all of my concerns which I had already advised him of on more than one occasion.

I will make the call to Tim if necessary but need this to be done sooner rather than later. This is not personal but will help avoid a potentially messy situation regarding our invoice costs to BSI and the ultimate denial of the fees by the Court appointed auditor.

Do you mind if I cancel them this afternoon and schedule an auctioneer from Harvey West to be in attendance at the auction for the standard $250 fee as opposed to the $750.00 fee that Hurley charges?

**From:** William O'Neil
**Sent:** Wednesday, June 18, 2014 11:43 AM
**To:** Erik Yoder
**Subject:** RE: Hurley auctioneers

My understanding is that we were trying them on a limited trial basis, to see how the overall costs compare. West remains the primary vendor for md loans, no change

William T. O'Neil
The O'Neil Group LLC
1629 K Street, N.W. Suite 300
Washington, D.C. 20006
woneil@oneilgroupllc.com
202-445-4277

**From:** Erik Yoder
**Sent:** Wednesday, June 18, 2014 9:23 AM
**To:** William O'Neil
**Subject:** Hurley auctioneers

Bill,

I meant to have this discussion with you yesterday as it relates to client disclosures, the audit of the costs, and other potential issues that I am not comfortable with regarding our duties to the client.

695

CONFIDENTIAL

TOL008071

In spite of our relationship with Harvey West and exceptional services they provide, Terry has proposed we switch auctioneers to an acquaintance of his in Pennsylvania, who has minimal to possibly no experience dealing with Maryland foreclosures as far as I can tell.

I have insisted that we stick with Harvey West, but Terry has put his foot down and wants to hire Hurley auctions. The agreement he wants to enter with them is absurd and would cost BSI a lot more than Harvey West.

Here is a comparison of the two companies:

**Harvey West:**
1. 1. I have had a relationship with Harvey West since 2007. They would normally not even entertain a firm with a small volume such as ours but for this relationship.
2. 2. Charges:
    $250 guaranteed; $350 on the outermost remote Maryland counties
    Cancellation fee: $150
    Only charge a commission if the lender sells property and the sale price is higher than the debt owed, which never happens so this clause is irrelevant.
3. 3. HW has a special agreement with the Washington Post, whereby a sale will be republished at no additional cost even if we make a mistake. This has already happened once. The cost of republication would have been $1,348.22, which we were not charged because of HW.
4. 4. These benefits are being offered to me because of my years at Shapiro. They are doing us a favor for handling our low volume.

**Hurley:**

1. 1. No experience as a Maryland auctioneer, as far as I can tell. He is unknown in the foreclosure firm realm in Maryland. I've already been training him, which is the worst use of my time. I've never had to train vendors before this.

2. 2. Charges:
    $750 guaranteed- Three times more expensive

    Cancellation fee: $750 Five times more expensive

    They claim that they will refund this fee if the sale is rescheduled, but canceled sales arise from the events of short sales or deeds in lieu. Occasionally bankruptcies result, but statistically speaking, that is far less frequent than short sales and deeds in lieu. Therefore, this "refund" is not helpful at all.

3. 3. Problematic clause: I don't think this is legal but the contract binds BSI to a strange commission. If the property is sold to a third party buyer anytime between the ratification of the Agreement with Hurley and within 60 days after the scheduled foreclosure auction date, then BSI will be obligated to pay Hurley 2% of the sales price at closing. This is regardless of whether the sale price clears BSI's debt. In fact, I am concerned that a commission agreement related to an REO property may require that Tim Hurley have a broker's license. At a minimum, BSI would have to consent in writing or our firm and Hurley Auctions would be subject of sanctions by the Maryland Real Estate Commission.

4. 4. Hurley wants a separate agreement with the above terms for every single sale. This is absurd—I've never seen such an arrangement.

I made it clear to Terry that this is nonsensical and not in the best interests of our client, since at a bare minimum, they are overpaying by $500 per file, with an auctioneer who is a virtually unknown in the state of Maryland and who I myself will have to train. Harvey West is reputable, reliable and highly experienced. Even Terry acknowledges that we need Harvey West for service of OTDs and skip traces. Hurley has recognized that they cannot handle these additional services and will not do this for us. What is the point in switching except to benefit a friend of the family?

CONFIDENTIAL

Given your vast experience, I am positive that you are familiar with the strict requirements of Duty of Loyalty to the Client. All potential conflicts of interest must be disclosed to the client. The bare minimum duties owed to the client are:

1) to fully disclose that we intend to switch auctioneers to an auctioneer other than one they are familiar with from use with the other primary law firms and one we are currently using;

2) explain to them in detail the differences in cost and that they may or may not have these fees approved by the auditor offsetting any claim to a deficiency judgment related to these fees;

3) offer them the opportunity to decide themselves if the background, skills, and experience meet or exceed the auctioneer we are currently using;

4) fully disclose the fact that Tim Hurley is a personal friend of Terry.

At this time we only have Hurley auctioneers scheduled to handle one file. The Everett file has an auction scheduled for July 15, 2014. In order to avoid a necessary disclosure to the client I suggest that you consider paying them for their costs of running the advertisement which we would have to pay in any event. It would be wise to cancel their use for the above referenced sale and request Harvey West attend the sale. We would not incur any additional costs and could avoid having to jeopardize our relationship any further with the client.

Unfortunately, I owe the above-stated ethical duties to the Bar just the same if not more than Terry and yourself considering my background as a foreclosure experience.

Please respond to this email and address these concerns that I have and how you plan to handle these issues ASAP.

Erik


Erik W. Yoder, Esq.
The O'Neil Group, LLC
7500 Old Georgetown Road
Suite 1375
Bethesda, MD 20814
(202) 684-7140
* Licensed in MD & Washington, D.C.


**This firm is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.**


•CONFIDENTIALITY NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.