PLAINTIFF'S EXHIBIT 14

**Terrance Shanahan**

**From:** Erik Yoder
**Sent:** Wednesday, June 18, 2014 3:33 PM
**To:** William O'Neil; Terrance Shanahan
**Subject:** RE: Hurley auctioneers

Actually, I raised my concern about using Hurley auctions with Terry several weeks ago. I didn't just spring this problem of an auction company which requires me to actually assist them with the basics such as the wording and placement of legal descriptions, the terms of the sale, etc. I never would have expected that I would be asked to be a part of editing Hurley Auctioneer's vendor contract, which is outrageous on its face, and assisting the development of their MD practice, which is clearly a start-up.

Terry- how many Maryland foreclosures has Hurley has conducted and for which firm(s)?

I don't have any problem with the idea of using an auction company other than Harvey West as long as it doesn't complicate my job, which is already strained enough as a result of a lack of resources. Additionally, I am the one who has to prepare the audit and account for these costs which are doubling and tripling overnight. You brought me on to fix all of the problems of the past which I inherited as a result of fundamental errors running a foreclosure practice. It is not fair that I am the one who has to manage the day to day affairs of keeping sales on track, deadlines met, answering to auditors and Judges in an environment which is hostile and critical of the practices of foreclosure firms. Not only that, but unlike other MD foreclosure firms, I have to deal with the additional scrutiny that will be thrust upon an unknown law firm using an unknown auction company with inflated prices outside of the industry standards for MD.

I am not raising these issues out of thin air—I discovered problems while doing basic functions of my position. I should not have had to ask the primary staff in charge of maintaining the firm's accounting records for answers to basic questions like the actual cost of a title report with non-responsive and misleading answers on more than one occasion. Basic file maintenance at any firm in any practice area requires that invoices and costs are kept and maintained in a central organized file or within individual case files, which any attorney working on the case should have access to. In my case, I actually need these invoices to do legal work such as the audit and I have to be able to explain these costs to judicial authorities. Why is this such a big issue?

Yes, I raised the title costs last week and problems with Hurley this morning. However these are very basic problems that you should want to resolve without unnecessary resistance and complications. Instead of just fixing things, you just isolate one thing from the host of facts underlying the problems with the title costs and using Hurley and turn it around on me as though I'm making a big deal out of nothing.

I have over seven years' experience in what I am specifically doing and I am more aware of the risks and liabilities we are facing than anyone else at this firm. I've never seen established firms just randomly test out vendors when you already have an economical option with a reliable company. There is nothing left to "find" as far as title costs are concerned— you have seen everything and previously agreed with me that the client should be informed and refunded for the amount of overages. I keep having to confirm whether we're going to do the right thing because of instances like this title cost issue. When I spoke with you in person, you agreed with me. Then, I get this barrage of e-mails justifying the practice and implying that the overbilling might be okay.

I am coming to you as the managing partner and my boss and simply asking that you cc: me whatever discussions you have with BSI so we're all on the same page. This is not an unreasonable request considering how these simple mistakes are being justified and generally mishandles instead of being rectified. You can't blame me for being concerned that you and Terry are not fully understanding my position and that you might, even unknowingly, misunderstand or misstate what I've asked to convey to BSI.

703

T Shanahan
DEPOSITION EXHIBIT 6
1-19-17

CONFIDENTIAL

TOL008079



I won't be here on Friday. Please let me know what you decide to do on both fronts.

**From:** William O'Neil
**Sent:** Wednesday, June 18, 2014 2:21 PM
**To:** Erik Yoder
**Cc:** Terrance Shanahan
**Subject:** RE: Hurley auctioneers

Let's be clear, you raised the title cost issue late last week, and the auction issue this morning. We are looking into the title costs and I agreed to fix any problem we find. I do not believe that using multiple vendors on a test basis so that in the future more than one vendor is available to us is an ethics breach, but I will clear that with BSI and MCM as necessary.

William T. O'Neil
The O'Neil Group LLC
1629 K Street, N.W. Suite 300
Washington, D.C. 20006
woneil@oneilgroupllc.com
202-445-4277

**From:** Erik Yoder
**Sent:** Wednesday, June 18, 2014 1:46 PM
**To:** William O'Neil
**Cc:** Terrance Shanahan
**Subject:** RE: Hurley auctioneers

I find it offensive that you are suggesting that I am up to something other than correcting the firm's practices which I have been complaining about for several months. If I had ulterior motives I would have gone directly to MCM/BSI and Bar Council without apprising you of anything or trying to work with you to fix things. If I took a stern or harsh tone the past week it is because I am frustrated with the lack of concern which as of last week can now affect me personally as a Trustee and the sole attorney put in charge of your foreclosure practice entirely.

I will leave it up to you if and when you decide you would like to discuss these issues any further.

**From:** William O'Neil
**Sent:** Wednesday, June 18, 2014 1:27 PM
**To:** Erik Yoder
**Cc:** Terrance Shanahan
**Subject:** RE: Hurley auctioneers

I will take care of any necessary disclosures and please refrain from the ethics lectures. It makes me believe that the purpose of these emails over the past several days is other than informing me of your concerns. Moreover, the repeated insinuation that Terry is doing something wrong when I am fully aware of the process is a bit much. Please stop it.

I'm on my way to my sister in laws funeral and will address this, and any other concerns you might have, when I get back. If you want to tell me the cost going forward with west at this point we will consider that option, but I see little problem in trying new vendors. If you think using this vendor on one sale will impact our relationship with west then say so. If as you say the vendor is too expensive then we will not be using them in the future.

William T. O'Neil

704

CONFIDENTIAL

TOL008080