**PLAINTIFF'S EXHIBIT 16**

**Erik Yoder**

| | |
|---|---|
| From: | William O'Neil |
| Sent: | Wednesday, June 18, 2014 3:55 PM |
| To: | Erik Yoder; Terrance Shanahan |
| Subject: | RE: Hurley auctioneers |

As I stated earlier, I am on my way to my wife's sister's funeral to be held tomorrow in Philadelphia, so I do not have the time or inclination to respond to all of the misstatements and mischaracterizations in this email, but we will address these issues when we are both in the office next week.

William T. O'Neil
The O'Neil Group LLC
1629 K Street, N.W. Suite 300
Washington, D.C. 20006
woneil@oneilgroupllc.com
202-445-4277

**From:** Erik Yoder
**Sent:** Wednesday, June 18, 2014 3:33 PM
**To:** William O'Neil; Terrance Shanahan
**Subject:** RE: Hurley auctioneers

Actually, I raised my concern about using Hurley auctions with Terry several weeks ago. I didn't just spring this problem of an auction company which requires me to actually assist them with the basics such as the wording and placement of legal descriptions, the terms of the sale, etc. I never would have expected that I would be asked to be a part of editing Hurley Auctioneer's vendor contract, which is outrageous on its face, and assisting the development of their MD practice, which is clearly a start-up.

Terry- how many Maryland foreclosures has Hurley has conducted and for which firm(s)?

I don't have any problem with the idea of using an auction company other than Harvey West as long as it doesn't complicate my job, which is already strained enough as a result of a lack of resources. Additionally, I am the one who has to prepare the audit and account for these costs which are doubling and tripling overnight. You brought me on to fix all of the problems of the past which I inherited as a result of fundamental errors running a foreclosure practice. It is not fair that I am the one who has to manage the day to day affairs of keeping sales on track, deadlines met, answering to auditors and Judges in an environment which is hostile and critical of the practices of foreclosure firms. Not only that, but unlike other MD foreclosure firms, I have to deal with the additional scrutiny that will be thrust upon an unknown law firm using an unknown auction company with inflated prices outside of the industry standards for MD.

I am not raising these issues out of thin air—I discovered problems while doing basic functions of my position. I should not have had to ask the primary staff in charge of maintaining the firm's accounting records for answers to basic questions like the actual cost of a title report with non-responsive and misleading answers on more than one occasion. Basic file maintenance at any firm in any practice area requires that invoices and costs are kept and maintained in a central organized file or within individual case files, which any attorney working on the case should have access to. In my case, I actually need these invoices to do legal work such as the audit and I have to be able to explain these costs to judicial authorities. Why is this such a big issue?

Yes, I raised the title costs last week and problems with Hurley this morning. However these are very basic problems that you should want to resolve without unnecessary resistance and complications. Instead of just fixing things, you just

1


O'Neil DEPOSITION EXHIBIT 8

YODER Prod. 000377
1/7