IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Erik Yoder** | * | |
|     **Plaintiff** | * | |
| v. | * | Case No.: 8:16-cv-00900-DKC <br> TRIAL DATE: April 24, 2018 |
| **William O'Neil, et al.** | * | |
|     **Defendants** | * | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY DEFENDANT WILLIAM O'NEIL AS COUNSEL FOR DEFENDANTS

Plaintiff, Erik Yoder, Esq. ("Plaintiff" or "Yoder"), through counsel, submits this Memorandum of Law in support of his Motion to Disqualify Defendant William O'Neil, Esquire ("Defendant O'Neil") as counsel for Defendants in this case (the "Motion"). For the reasons set forth in Plaintiff's Motion and this accompanying Memorandum, this Honorable Court should grant Plaintiff's Motion.

### I. Statement of Facts

Plaintiff incorporates herein the factual averments of his Complaint and of the Court's Memorandum, dated December 8, 2017, denying Defendants' Motion for Summary Judgment. (See ECF Nos. 1 and 39). In this lawsuit Plaintiff has sued Defendant O'Neil and two limited liability companies of which he was the managing member for discriminatorily dismissing him in retaliation for Plaintiff's complaining to Defendant O'Neil about certain allegedly illegal and improper activities engaged in by Defendants in their mortgage foreclosure law practice in Maryland. Plaintiff's claims are brought under the employee protection (whistleblower) provision of the Consumer Financial Protection Act of 2010, Section 1057 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "CFPA"), 12 U.S.C. Section 5567.

In his Motion, Plaintiff has shown that Defendant O'Neil is a necessary witness in the jury trial of this matter scheduled to commence on April 24, 2018. He was the decision-maker with regard to Plaintiff's termination of employment as lead mortgage foreclosure case lawyer for Defendants soon after Plaintiff first complained to Defendant O'Neil about Defendants' overbilling practices. In this suit Plaintiff contends that Defendant O'Neil implemented a plan to attempt to force Plaintiff to resign and communicated directly with Plaintiff about arrangements for Plaintiff to voluntarily leave his employment with Defendants. Defendant O'Neil contends that Plaintiff quit his employment on June 27, 2014, which is one of several contested factual issues. Defendant O'Neil is the sole or main witness for Defendants on the critical issue of whether the grounds asserted by Defendants for terminating Plaintiff were a pretext for discrimination and retaliation against Plaintiff for engaging in protected activity. (ECF No. 1, paras. 25-31; ECF No. 39, pp. 2-6 and 22-24).

Defendant O'Neil has been serving as counsel for Defendants for most of this litigation, after his counsel that were originally representing the Defendants withdrew. *See* (ECF No. 16). At the same time Defendant O'Neil was deposed by Plaintiff on March 7, 2017. The transcript of his deposition was 208 pages long. Defendant O'Neil filed a Motion for Summary Judgement on behalf of all the Defendants on May 16, 2017. (ECF No. 33 with attachments). One of the attachments to Defendants' Motion was the Declaration of Defendant William O'Neil (ECF No. 33, attachment #2). On June 19, 2017, Plaintiff submitted an opposing Declaration as part of Plaintiff's Response to Defendants' Summary Judgment Motion. (ECF No. 36, attachment #7). In short, Defendant O'Neil obviously knew or could reasonably foresee from the outset of this matter that he likely would be an essential witness in this case and that his testimony would conflict with Plaintiff's in multiple material ways.

## II. Argument

Plaintiff submits his Motion and supporting Memorandum pursuant to Rule 3.7 of the Maryland Lawyers' Rules of Professional Conduct ("Rule 3.7(a)"). Rule 3.7(a) states as follows:

*[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless:*

*(1) the testimony relates to an uncontested issue;*

*(2) the testimony relates to the nature and value of legal services rendered in the case; or*

*(3) disqualification of the lawyer would work a substantial hardship on the client.*

[Plaintiff submits that subparts (a)(1) and (2) of Rule 3.7 have no application to this disqualification motion].

There exists a factually and legally analogous case to the present matter. *See E.E.O.C. v. Bardon, Inc.*, 2010 WL 323067 (D. Md. 1/29/2016) (Titus, J.). In *Bardon*, an employment discrimination suit, the attorney for Defendant, Norman Buchsbaum, Esq., had investigated the sex harassment claim of the former employee-intervenor and had interviewed the employee-intervenor and several other witnesses. The employee-intervenor, Ora Borell, contended that attorney Buchsbaum would be a necessary witness at trial because of information revealed in his investigation and because of his primary role in the employee's dismissal at her termination meeting. The Court agreed that the attorney should be disqualified because his testimony was highly material and noncumulative and none of the exceptions to Rule 3.7's prohibition on serving as both lawyer and witness applied to Mr. Buchsbaum.

In response to the Rule 3.7 exception argument, Judge Titus initially concluded that the burden was on the lawyer to establish substantial hardship to the Defendant because Mr. Buchsbaum knew or reasonably should have known from the outset of the case that a potential conflict existed between his

roles as advocate and witness. The Court balanced the competing interests of the client, the Defendant-employer, and those of the tribunal and the opposing party, Ms. Borell. In so doing the Court considered "the effect of the disqualification on the lawyer's client, whether the tribunal is likely to be misled, whether the opposing party is likely to suffer prejudice, and whether one or both parties could reasonably foresee that the lawyer would probably be a witness." *Id.* at *2. The weight attributed to these factors, according to the Court, depended "on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." *Id.*

While the Court acknowledged that Defendant undoubtedly would suffer hardship if its counsel were disqualified, it determined that the hardship was not substantial enough to outweigh concerns about the jury being confused and misled and about the prejudice to the EEOC and Ms. Borell. As to the issues of conflicting testimony and the jury being mislead, the Court observed that Mr. Buchsbaum's testimony was likely to conflict with Ms. Borell's at the very least. Furthermore, Judge Titus observed that there was a high likelihood that the lawyer's name will "be invoked by witnesses and that the jury will look to him for answers when he talks to witnesses as well as when he testifies himself. Consequently, if Mr. Buchsbaum is allowed to perform dual advocate-witness role, the jury will likely be confused and misled and the EEOC and Ms. Borell may face severe prejudice." Id at *2.

The case at bar presents even clearer and more compelling grounds than in *Bardon* for grant Plaintiff's Motion. As in *Bardon*, Defendant O'Neil unquestionably knew from the outset of the matter that he positively would be a necessary witness at trial. Defendant O'Neil was the decision-maker with regard to terminating Plaintiff. Defendant O'Neil set and carried out the plan to sever Plaintiff's employment. Defendant O'Neil justified Plaintiff's abrupt dismissal on grounds of declining financial condition of the law firm. As the managing member of the other Defendants, Defendant O'Neil was

fully aware of the financial situation of the business. Financial distress, in fact, was a pretext for Plaintiff's dismissal.

This case is even stronger than *Bardon* for Defendant O'Neil's disqualification as counsel since, unlike Mr. Buchsbaum, O'Neil was a party to this lawsuit from the start. Unquestionably, Defendant O'Neil had the most comprehensive involvement of anyone in this entire matter. He knows, among other things, the real reason for Plaintiff's dismissal. Defendant O'Neil's intent is a critical matter is his discriminatory discharge case. Defendant O'Neil is the person who told Plaintiff that the declining financial condition of the business was the reason Plaintiff was being asked to find another job. As noted above, Plaintiff maintains that that justification was a pretext for Defendants' discriminatory retaliation against him for engaging in protected activity. All of these factual disputes leave no doubt whatsoever that Defendant O'Neil is a material witness. As a result, Plaintiff intends to call Defendant O'Neil as an adverse witness at trial.

If Defendant O'Neil were permitted to serve as both an advocate and witness at trial, the jury undoubtedly will be confused and misled by his dual role. His name and his involvement in almost every aspect of this case will be a central focus of this trial. As a result, the jury repeatedly will be looking to Defendant O'Neil for answers when he examines witnesses and when he testifies. As in *Barton*, Plaintiff here would be severely prejudiced because of Defendant O'Neil's dual shifting role. Imagine Defendant O'Neil, for example, cross-examining Plaintiff pertaining to the question whether he resign on June 27, 2014 after Yoder testifies that he did no such thing. Yoder and O'Neil were the only people present at that time. Undoubtedly, the jury would be confused by questions from Defendant O'Neil based on his version of the facts from that meeting. If no challenge to Plaintiff's testimony on that point were made, the jury would be confused by Defendant O'Neil's failure to attempt to impeach Plaintiff on details of the meeting. In that situation and all during the trial the jury will be looking to

Defendant O'Neil for answers when he examines witnesses and when he testifies himself. Similarly, in his closing argument, imagine Defendant O'Neil, as advocate, vouching to the jury that his testimony is what is credible and show be believed on a myriad of disputed factual issues. Unquestionably, this would be a confusing situation to a jury and one which could severely prejudice Plaintiff. Judge Titus viewed these considerations as telling in disqualifying Defendant's lawyer in *Barton*. Having availed himself of the corporate form, it is perfectly fair and appropriate that Defendant O'Neil retain separate counsel and proceed in accordance with Rule 3.7.

For all of the same reasons and more, as discussed above, Defendant O'Neil should be disqualified from acting as counsel in this matter.

## III. Conclusion

For all of the foregoing reasons, Plaintiff requests that this Honorable Court grant his Motion and disqualify Defendant O'Neil from serving as counsel to Defendants at this trial.

Respectfully submitted,

/s/
Howard B. Hoffman, Esq.
Federal Bar No. 25963
600 Jefferson Plaza, Ste. 304
Rockville, Maryland 20852
(301) 251-3752
(301) 251-3753 (fax)
hhoffman@hoholaw.com

/s/ (with permission)
Stephen J. Springer, Esq.
(Pro Hac Vice)
Rittenhouse Plaza
1901 Walnut Street, Unit 4A
Philadelphia, Pennsylvania 19103
(215) 732-8229
springerlaw@msn.com

*Counsel for Plaintiff, Erik Yoder*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of February, 2018, a copy of the foregoing Plaintiff's Motion to Disqualify and Memorandum in Support Thereof, along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

/s/
Howard B. Hoffman